Pearson, J.
 

 One Fleming, who was in jail under a
 
 capias ad satisfaciendum,
 
 escaped. The plaintiff was sued, as sheriff, and forced to pay a large amount to the creditors, and brings this action against the defendant, his jailor, and declares upon an undertaking to keep the said Fleming faithfully and securely, and on failure to indemnify and save the plaintiff harmless from all loss or
 
 *655
 
 damage. It is stated in the case agreed, that Fleming made his escape without the knowledge or consent, or
 
 actual negligence
 
 of the defendant.
 

 The defendant by his counsel admits, that there was an implied undertaking to keep the prisoner faithfully and diligently, but denies, that the law implies ail undertaking to keep
 
 safely
 
 or
 
 to indemnify.
 

 The Judge in the Court below so decided. To this the plaintiff excepts. There is no error.
 

 For the plaintiff it is said, the sheriff is by law bound to keep prisoners
 
 safely.
 
 The defendant, when he undertook to act as jailor, must be presumed to have done so. with reference to this liability of his principal; hence* there is an implied undertaking on his part, so to act as to prevent his principal from being subjected to loss; or, in other words, there is an implied undertaking to keep safely or indemnify.
 

 For the defendant it is said, the general rule is, that agents, servants, and bailees, where the contract is for the benefit of both parties, are only liable for ordinary neglect. In the case of sheriffs, common carriers, and innkeepers, an exception is made; they are held liable as in
 
 surers,
 
 except against “the act of God, and the King’s enemies,” upon the ground of
 
 public policy.
 
 This reason does not extend to their deputies, agents and servants.— Therefore, the latter do not fall under the exception, but stand under the general rule.
 

 The argument for the plaintiff cleaidy shows the expediency of taking a bond of indemnity, (as sheriffs usually do.) But if he neglects to do so,
 
 non constat
 
 the law will imply an undertaking to keep prisoners safe or indemnify. An undertaking to act faithfully and diligentljvis implied by law. This, the jailor is
 
 able to do,
 
 if he will. B-t when it comes to
 
 insuring,
 
 that prisoners will be kept safely, and indemnifying against acts beyond the control of the jailor, and which do not fall within the reach of
 
 *656
 
 ordinary diligence, it is clearly a different question. This higher obligation, which the law, from motives of public policy, imposes on the superior, can only be imposed on the inferior by an express undertaking. Public policy is satisfied by hcldingthe superior responsible. As between him and his jailor, the general rule applies, unless there be an express agreement to indemnify.
 

 To illustrate r a rail road company, as a common car. rier, is bound to insure every article bailed to be carried ; because, public policy requires it, and it is presumed the rates are fixed in reference not only to the trouble of carrying, but to this liability.
 

 This policy does not extend to the conductor of a train, and there is no presumption, that he has undertaken a higher degree of responsibility, than that which is imposed by the general rule, in the absence of an express undertaking to that effect, in consideration of higher wages.— -So, although the company be chargeable, as a common carrier, he is not liable over, without proof of a want of ordinary care.
 

 . It is suggested, that if this liability is not implied by Jaw, it is unlawful to take a bond of indemnity and such bond is void ; and that the real purpose of taking these-bonds is not to add to the liability, but to increase the security.
 

 It is against law to take a bond of indemnity, and thereby encourage or permit an unlawful act — as to give a stranger a key and free access to the jail. But an indemnity from the jailor is an inducement to make him more strict and vigilant in the discharge of his duties. Sheriffs have, for this reason, always been allowed by bond or express undertaking of jailors and deputies, to raise the responsibility of the inferior to the same degree as that imposed on the superior.
 

 The practice of taking bonds has been so uniform, that we have not been able to find a single case like the'pre*
 
 *657
 
 sent. There is, however, an old case, in a report of high authority, which fully sustains our conclusion. —
 
 Atterton
 
 v.
 
 Harward,
 
 Croke Eliz. 349. That was case by a bailiff against a debtor for making his escape, whereby the creditor recovered of the sheriff, and he of the bailiff, on his assumpsit to save the sheriff harmless against all escapes ; and so the bailiff sought to recover of the debtor, for making his escape, by which
 
 tori
 
 he had been subjected to damage. Upon not'guilty, it was found against the plaintiff. The Court was of opinion, “that the bailiff was not chargeable to the sheriff by law, but by
 
 his assumpsit,
 
 and this being his voluntary act, shall be no cause to charge the defendant, but shall make himself liable.” But they argued, “if the bailiff had been chargeable
 
 bylaw,
 
 without
 
 such promise,
 
 an action did lie for him against the defendant, who caused him to be charged.”
 

 Upon the authority of this case, in
 
 Kain
 
 v.
 
 Ostrander,
 
 8 John. 207, it is said, “the usual course is to resort to his bond of indemnity, and if he has omitted to take one, the jailor is only answerable on his implied undertaking to serve the sheriff with diligence and fidelity.” And the decision is in favor of the jailor, on the ground, that there was no evidence of that
 
 culpable neglect,
 
 which is requisite to make a jailor liable.
 

 Per Curiam. Judgment reversed.
 

 Note. — In consequence of the indisposition of Judge Nash, very few opinions were delivered by him at this Term.